Lee, J.
This case turns upon the construction of the will of the late Alexander S. Hooe of King George.
For the plaintiffs it is contended that the devise of the lands called “ Dissington” and “Freidland” to the testator’s son George M. Hooe, operates to except them out of the estate the uses and profits of which had in the first clause of the will, been devised to the daughters who might remain unmarried. Or, if this *247 be not so, that there is an incurable repugnancy between the devise to the daughters and that to George M. Iiooe the effect of which is that the latter operates as a revocation pro lanto of the former. And if neither of these views can be sustained, it is insisted that the interest taken by the daughters in “ Dissington” and “ Freidland” was a mere equitable right to the use and profits dependent upon the legal estate vested in George M. Hooe by the terms of the will and thus that the plaintiffs having the legal title must recover in this action whatever may be the rights of the defendant elsewhere.
There are certainly no express terms of exception used in the will nor are any such to be supplied unless rendered necessary by the clear and plain intention of the testator. Indeed had there been express terms of exception no room would have been left for controversy. The argument is however that from the terms and succession of the several devises to the daughters and George M. Hooe, the subject of the latter is by necessary implication withdrawn and excepted from the former, because George M. Hooe was to take Dissington and Freidland immediately and no interest was intended to be given in them to the daughters. Thus the question is resolved into an enquiry as to what was the true meaning and intention of the testator, and this is to be ascertained by weighing the terms of the will themselves and by placing ourselves in the situation of the testator and considering the language he has used in the light reflected upon it by the circumstances surrounding him at the time his will was made, and the relative situation of the different parties. Kennon v. McRobert et ux. 1 Wash. 96; Wootton v. Redd’s ex’ors, 12 Gratt. 196.
The testator by the first clause of his will gives the use and profits of all his estate real and personal to his daughters who may remain single. By the next *248 clause, lie declares that should the daughters all many or when they died, his property was to be equally divided among his surviving children. Thus an estate for life in the use and profits of the whole estate was plainly given to the daughters determinable as to each, upon her marriage. Then follows the devise to George M. Hooe of Dissington and Freidland, which is declared to be in consideration of the attention and kindness that he had paid and would continue to pay to his sisters. How if we look to the context and general tenor of the instrument, it seems apparent that the testator’s first object was to provide for the support of his unmarried daughters, and to this end he devotes the profits of his whole estate. Upon their marriage when he assumed that the necessity for such provision would cease, or at their death, he directs a division of his property among his surviving children. But it occurs to him that his son George M. Hooe for the reasons which he assigns is entitled to some special manifestation of gratitude and regard, and he accordingly gives to Mm Ms lands called “ Dissington” and “ Freidland.” The devise to the daughters is of the use and profits: that to the surviving children and that to George M. Hooe are of the absolute title and estate. If therefore the devise to George M. Hooe constitutes an exception out of any previous devise it would seem to be rather out of that to the surviving children than that to the daughters. The division of the property among the surviving children was to take place upon the death or marriage of the daughters, and it is not an unreasonable interpretation of the will that the devise to the son should take effect at the same period.
This view of the testator’s intention as deduced from the general scope and context of the will is greatly strengthened when we come to consider the circumstances by which he was surrounded at the *249 time it was made. It appears that the only real estate which he owned were these lands called Dissington and Freidland and certain ground rents in Alexandria of the annual value of one hundred and thirty-five dollars: that these two tracts lay in the county of King George and were separated from each other by the main road leading from Fredericksburg to King George court-house, but had always been cultivated together and treated as one plantation by the testator: that his residence with his family for many years and up to the time of his death was upon Freidland on which was a mansion-house with servants’ houses, barns and other out-houses, while upon Dissington there was no dwelling or other house whatsoever: that Dissington contained about six hundred and twenty-six acres and was assessed in 1835 (the year of the testator’s death) at the sum of five thousand eight hundred and thirty-four dollars and thirty-two cents: that Freidland contained about one hundred and forty-nine acres and was assessed in the same year at two thousand two hundred and ninety dollars and thirteen cents: that the testator owned slaves, thirty-one in number and valued at the aggregate sum of ten thousand two hundred and ninety-five dollars, and other personal estate of the value (as by appraisement) of one thousand five hundred and thirty-one dollars: and that he owed very few debts and those of very inconsiderable amount. It further appears that at the making of his will the testator had nine children, three sons and six daughters: that of the sons, the eldest Alexander S. was a captain in the United • States army and had recently married the daughter of a very wealthy man: that the other two sons were unmarried and were lieutenants in the navy: that of the daughters one only was married, and the youngest was of the age of ten years only.
Now it is most probable that the testator regarded *250 any provision for the immediate support of his sons unnecessary, thinking the pay which they received as army and navy officers adequate for that purpose whilst he did deem it necessary and proper to make such provision for his daughters. And it cannot be doubted that it was his intention they should continue to reside until they might happen to marry upon the property on which he had for many years resided with his family and should be supported by cultivating both tracts just as he had himself done with the slaves. It is impossible to suppose he could have intended to give the daughters thirty-one slaves and yet take from them the lands on which they had their home and which would be necessary for the profitable employment of the slaves and for their support as well as that of the daughters. It cannot be supposed that he intended the slaves to be hired out and their hires applied after providing for the support of children and any who might be infirm or disabled, to the maintenance of the daughters. Nor is there any thing in the motives by which the testator is prompted to make the devise to George M. Hooe which at all evinces any intention to diminish the extent of the previous devise to the daughters. On the contrary those which he assigns grow out of his affection for his daughters and looked to their benefit and advantage. The gift of Dissington and Freidland to George M. Hooe was in consideration of the attention and kindness which he should continue to pay to his sisters as well as of that which he had previously shown; and when those fraternal offices should be no longer required by the condition of his sisters, he was to be rewarded by the enjoyment of the property given to him by his father in consideration of his affection and dutiful conduct towards those whom the father regarded as most needing protection and provision and who were plainly the first objects of his bounty and paternal care. '
*251 Nor is there any such inconsistency between the devise to the daughters and that to George M. Hooe that the latter should be regarded as a revocation the former to the extent of the subject which it embraces. The rules on this subject of an implied revocation of a previous devise by a subsequent inconsistent one, are well settled. It is the duty of the judicial expounder of a will to give effect to every word without alteration or diminution, if an effect can be given to it not inconsistent with the general intent of the whole will taken together; and the former of several apparently contradictory devises is never to be sacrificed but on the failure of every attempt to give to the whole such a construction as will render every part of it effective : and in the attainment of this object, the mere local order of the several devises will be disregarded if by their transposition a consistent disposition may be deduced from the entire will. 2 Jar-man on Wills 415 ; Gray v. Minnethorpe, 3 Ves. R. 103; Constantine v. Constantine, 6 Ves. R. 100; Doe ex dem. Baldwin et ux. v. Rawding, 2 Barn. & Ald. 448, 449, 452; Shelton’s ex'ors v. Shelton, 1 Wash. 53. Thus the rule which assigns to a subsequent devise in a will the effect of revoking a previous one as being the latest manifestation of the testator’s intention is never applied except where the two provisions are totally irreconcilable and where the real intention of the testator cannot be ascertained. Covenhoven v. Shuler, 2 Paige’s R. 122; Homer v. Shelton, 2 Metc. R. 194, 202. Nor is it ever suffered to clash or interfere with the doctrine which enjoins upon the expositor to look for the intention of the testator in the general tenor and context of the instrument and to qualify or even reject any clause or phrase1 that may be found incompatible with it; and though first expressed, this general intent shall overrule the particular intent afterwards disclosed. 1 Jar-man on Wills 420; 2 Wms. Ex. 710, et seq.; Doe ex *252 dem. Bosnall v. Harvey, 4 Barn. & Cress. 610, 10 Eng. C. L. R. 419; Jesson v. Wright, 2 Bligh. Par. Cas. 1, 56; Boon v. Cornforth, 2 Yes. R. 277; Coryton v. Helyar, 2 Cox’s Cas. 340; Lunn v. Osborne, 7 Sim. R. 56, 9 Cond. Eng. Ch. R. 476; Bartlett v. King, 12 Mass. R. 537; Cook v. Holmes, 11 Mass. R. 528. And the courts have ever betrayed an anxiety in the interpretation of wills to adopt such a construction as will give effect to every part of an instrument and thus avoid declaring any provision which it contains to be repugnant to others. Thus where a testator in different parts of his will gives the same identical lands to different persons in fee; this would appear to be a case of direct and insuperable repugnancy in which the earlier devise in the will would according to the rule be deemed to be revoked by the later. But the difficulty^ has been overcome by the modern construction which would seem to have prevailed in opposition to the early;writers, according to which the devisees take concurrently. Sherratt v. Bentley, 2 Myl. & Keene 149, 7 Cond. Eng. Ch. R. 305; Ridout v. Pain, 3 Atk. R. 486; Constantine v. Constantine, 6 Ves. R. 100; 1 Jarman on Wills 417. So where there are apparent inconsistent limitations on an estate in fee, the conflict has been reconciled by assuming that the latter disposition was intended as a substituted devise in case of lapse and applied exclusively to the event of the prior devisee dying in the lifetime of the testator. Clayton v. Lowe, 5 Barn. & Ald. 636, 7 Eng. C. L. R. 218. Other illustrations of the astuteness of the courts to reconcile apparent repugnance between the devises of a will will be found in the cases. Holdfast ex dem. Hitchcock v. Pardoe, 2 Black. R. 975; Coryton v. Helyar, 2 Cox’s Cas. 340; Bettison v. Richards, 7 Taunt. R. 105, 2 Eng. C. L. R. 40.
In this case I think there is no difficulty in reconciling the seemingly inconsistent devises. The devise *253 to the daughters is as we have seen, of a life estate determinable as to each upon her happening to marry. This is followed by a devise in fee of the lands to George M. Hooe. The plain and natural import of such a disposition would seem to be that the former devise should have its full effect and the latter take effect in remainder after the determination of the previous estate upon the marriage or death of the daughters. Such I think, we must see was the intention of the testator whether we look to the general tenor and context of the will alone or view it as illustrated and explained by surrounding circumstances. There is therefore no room for this doctrine of repugnancy and implied revocation. The case resembles that put of a devise of lands in fee to A and a subsequent devise of the same lands to B for life. In the construction of law both devises shall stand and the will shall be read as if the devise had been first to B for life with remainder to A in fee. Per Anderson, C. J. Anon'. Cro. Eliz. 9.
This construction will be found strongly supported by a decision of the Supreme court of North Carolina in a very similar case. The testator by his will gave to his wife a life estate in the land and plantation whereon he lived. After some other provisions, the will proceeded as follows : “To my son Aaron I give a horse &c. my land and plantation that I have before mentioned in this will with all the farming utensils &c.” It was contended that the devise of the estate for life to the wife was revoked by the subsequent devise to the son or at least was so far modified that the son became entitled to an immediate estate in the premises on the death of the testator and to a joint possession with the wife. But the court held otherwise and that the wife was entitled to an exclusive life estate. Ruffin, C. J. said “ that no contradiction was to be allowed of unless the several provisions are *254 absolutely irreconcilable.” “ That the natural import of” (such a devise) “ is that the latter takes in remainder and therefore that the first gift remains in force. In that way there is nothing incongruous in the two .dispositions but each operates in its natural order.” Crissman v. Crissman, 5 Ired. Law R. 498.
In our case the devise to the daughters is of a life estate determinable as to each upon her previous marriage, and there is the additional circumstance evincive of the testator’s intention that there should be no interference between it and the devise to George M. Hooe, that the former is in terms of the use and profits of the estate, the latter is of the lands by the names which had been given to them.
The remaining ground upon which the right to recover in this action has been sought to be maintained, that the devise to George M. Hooe passes the legal title at least subject to accountability in ecpiity to the daughters for the rents and profits, is I think equally unsustainable. It is in vain to enquire what might be the technical import of the language used, or the nature of the limitations which it might create if employed in a deed. It is the language of a nonprofessional gentleman in the country" framing for himself the testamentary disposition of his estate. There is no room here for the application of technical rules or the niceties of conveyancing. The first and great rule in the exposition of wills, to which all other rules must bend, as said by Chief Justice Marshall, is that the intention of the testator shall prevail provided it be consistent with the rules of law. It is the polar star to guide us in the construction of wills. Smith v. Bell, 6 Peters’ E. 68, 75, 84. If the intention be apparent, no strict legal construction nor technical sense of any words whatever, shall prevail against it. 2 Wms. Ex. 710 ; Hodgson v. Ambrose, 1 Doug. R. 337, 342; Homer v. Shelton, 2 Metc. R. 195; Kennon v. *255 McRobert et ux. 1 Wash. 96. Here the plain and unmistakable intention of the testator was that the daughters should have the use and profits of the whole estate for their support and education until the necessity for such a provision should cease by reason of their marriage or death : and this right to cultivate the lands for their own benefit with the slaves, carries with it as a necessary incident the absolute right to the possession untrammeled by any notion of mere trust. Or if it be regarded in the terms of its creation, as a devise in trust to permit the daughters to receive the rents and profits, it is an executed use carrying the legal title upon which the daughters may successfully rest their defense to any action by George M. Hooe or his heirs before their estate is determined as provided in the will, upon the principle established in Doe ex dcm. Leicester, 2 Taunt. R. 109. Either way, the will should in effect be read as giving a life estate to the daughters determinable as to each by marriage with remainder in fee to George M. Hooe.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Lee, J.
The judgment was as follows :
The court is of opinion, that by the first clause of the will of the said Alexander S. Hooe deceased, an estate for life was given to his daughters in the property therein described, determinable as to each, upon her marriage.
And the court is further of opinion that the devise of the lands called “ Dissington” and “ Freidland” to the testator’s son George Mason Hooe, by the third clause of the will, is not to be regarded as an exception out of the general devise in the first clause to the *256 daughters, nor as a revocation of said devise pro tanto upon the ground of repugnancy thereto.
And the court is further of opinion upon the true construction of said will that the daughters did not take a mere equitable right to the use and profits of the property devised dependent as to the lands called Dissington and Freidland upon a legal estate vested in possession in the said George Mason Hooe, but took such a legal estate in the use and profits of the testator’s whole estate including Dissington and Freidland as entitled them to retain the possession thereof until they should be married or die, .and that the estate given to George Mason Hooe in Dissington and Freidland will not become vested in possession as long as either of said daughters shall remain in life and unmarried.
And the court is therefore of opinion that as the defendant is one of the daughters of the said Alexander S. Hooe and is still unmarried, the plaintiffs are not entitled to recover in this action.
And so it seemeth to the court here that there is no error in the judgment aforesaid.
Therefore it is considered by the court that the said judgment be affirmed and that the defendant in error recover against the said Elizabeth M. A. G. Hooe, prochein ami of the plaintiffs thirty dollars damages according to law for retarding the execution of the said judgment, together with her costs by her in the defense of said writ in this court expended. Which is ordered to be certified to the said Circuit court.