## TRIALS BEFORE JUSTICES OUTSIDE OF THEIR TOWNSHIPS.

Common Pleas Court of Cuyahoga County.

### THE K. B. COMPANY v. CHARLES BRENNER ET AL.

Decided, October 6, 1911.

*Justices of the Peace—Jurisdiction of, in Attachment Proceedings— Trial Must be Held in Township in which Justice Was Elected— Sections 582, 583 and 584.*

1. The provision of Section 582, providing that no justice of the peace shall hold court outside the township for which he was elected, is in civil actions mandatory; and while by Sections 582 and 583 such a justice of the peace has jurisdiction in attachment cases co-extensive with the county, these latter sections do not enlarge the territorial jurisdiction of such justice of the peace for holding court. Where, in an attachment case, such justice of the peace attempts to hold court outside his township, his proceedings therein are *coram non judice* and void.

2. Consent by parties to the action to such justice of the peace holding court outside his township will not confer jurisdiction on such justice to pronounce a valid judgment.

*W. H. Boyd,* for plaintiff.
*Herman Preusser,* contra.

CHAPMAN, J.

In this case the plaintiff seeks to enjoin the defendant Brenner, a justice of the peace, and his constable, from levying execution on certain judgments rendered against the plaintiff for costs in a large number of attachment proceedings in which the present plaintiff was party plaintiff to suits in the court of the defendant Brenner.

It is admitted that the defendant, Brenner, is and was a duly elected, qualified and acting justice of the peace in the township of Rockport, Cuyahoga county, Ohio.

The question presented by the motion made by the plaintiff for judgment on the pleadings is raised by reason of the admissions in the answer of the defendant, Brenner, as follows:

"The defendant says that the said plaintiff, with full knowledge that he was a justice of the peace of Rockport township. came before him and commenced said actions, and that said cases were heard and tried in his office in the Beckman Building, and judgment rendered in the township of Rockport, and defendant denies that said judgment was rendered in the Beckman Building, Cleveland township."

By this admission of the answer the court understands, and it was admitted to be true on the argument, that the original attachment proceedings, brought by the plaintiff, were begun with the defendant justice in Cleveland township, where the defendant maintained an office and transacted business; that all the necessary papers to begin the original attachment cases were filed with the justice of the peace in his said office in Cleveland township; that process was issued thereon and service made from and return thereon made to his Cleveland office; and that the hearing and trial was had in Cleveland township, and the entire proceedings held and conducted in that township, the only qualification being that he denies rendering judgment in Cleveland township. Just what this means is not disclosed. The defendant does not say he entered judgment on his docket in Rockport township. So far as the court can interpret, the words "rendered judgment" seem to be used in these pleadings as having reference to the mental process of forming judgment on the facts or the making up of his decision. It is not stated that he even announced his determination in Rockport township, or ever sat as a justice in any part of the proceedings in these cases in said Rockport township, or held court or heard evidence or issued any process from or in that township, but, on the contrary, every step in these attachment cases was taken by him up to rendering judgment, and all steps thereafter of entering the judgment on his docket and issuing execution on the alleged judgments, outside of the township for which he was elected.

It is not disputed that, if these judgments are void, an injunction may be issued by this court against their enforcement; so that the sole legal question presented is, whether these judgments are valid and enforceable, or void for the reason that the justice held this court at a place other than that provided by law.

Article IV, Section 9 of the Constitution provides that

"A competent number of justices of the peace shall be elected by the electors of each township in the several counties   *   *   * and their powers and duties shall be regulated by law."

Section 582 of the Revised Statutes now contains the provision that no justice of the peace shall hold court outside the limits of the township for which he was elected. The style of the original act, of which Section 582 was a part, confined itself to providing for the jurisdiction of justices of the peace in civil courts (S. & C., 769). Sections 583 and 584 are part of the same original act. Sections 583 and 584 provide that in certain particular matters the jurisdiction of a justice shall be co-extensive with the county. Among these provisions are those in reference to attachment cases. Attachment cases are, therefore, wholly civil cases; and while, by the provisions of Sections 583 and 584, a justice has jurisdiction to issue attachments and proceed against goods and effects of the debtor, co-extensive with the county, it is manifest that these sections do not specify where he shall hear such proceedings; but the place for holding court was already provided for in the previous section. These sections purport to give jurisdiction over the persons of the defendants and particular subject-matters. They do not provide as to the place where the justice shall hold his court in respect to such proceedings. But Section 582 plainly says where he shall hold his court, which is in the township which elected him.

The whole policy indicated by the Constitution and the various sections in respect to jurisdiction and duties is, that the justice court is a township court of limited powers. Within the limits set up by the statute, justice judgments are valid as those of any other court. And while a justice is given jurisdiction of certain subjects throughout the county, as attachments, and over persons outside his township in certain instances, yet the Legislature has seen fit to place a limit as to where he shall hold his court. Section 582 determines the place where he shall hold his court in civil actions, as well as his jurisdiction of both causes of action and persons of defendants, save in certain matters, and as to certain persons set out in the subsequent sections. None of

these sections provide any other place than his township for holding court. The later sections pertain wholly to subject-matter and persons, and give him jurisdiction to hear and determine matters in controversy arising outside of his township, and over persons residing outside of his township, but are silent as to the place he may hold his court; so we are remitted to Section 582 as to the place where he must hold court. This part of Section 582, as to where he shall hold his court, was not provided for until 93 Ohio Laws, page 146, enacted in 1898. By that enactment the place of holding court was expressly provided for. This provision can not be taken as merely directory. There can be no question under the Constitution but that the Legislature may define and regulate the place where a justice shall hold his court, as well as the matters that he shall hear therein and the persons who shall be answerable therein. This power to regulate includes the power to limit his operations and duties; and when the Legislature has said he may exercise certain powers and duties in civil cases in a certain manner, the manner and mode become limitations just as much as the limitation as to causes, persons and amount.

There seems to be good reason for the provision, as a justice of the peace is not a county officer, but a township officer, by the Constitution. The mere fact that he has jurisdiction of causes of action and persons throughout the county in certain cases does not make such officer into a county officer or a state officer; nor does it follow that he may hold his court outside of the limits of his township and go roaming at large over the county. These justice courts are for the convenience of the people, not for the convenience of the justices. They are primarily for the settlement of small causes among neighbors, and are supposed to be held so near to them as not to cause serious inconvenience and loss of time in attending court. He is elected by the people of the township, and is accountable to them for the exercise of his office; and he must reside among them. In order that they may determine the manner in which he discharges his duties, such duties must be performed where the electors of the township may observe the manner of his discharge of such duties. The electors who elect a justice are supposed to have an opportunity to attend his

court; yet if he can hold his court outside of his township at a stated place, or at no stated place, the very electors who elected him have no reasonable opportunity to attend his court or know of its proceedings. Persons called into court have a right to know where that court will be held, and the statute has fixed a place so that they may have this information, so that there may be no uncertainty where they shall attend. If the jurisdiction contended for in this case is to prevail, litigants must seek and attend the justice court in any township where the justice may choose to hold court. If he may require litigants to attend in any other township in an attachment case, he may take such defendants from the township in which he was elected to any other township of the county. By subsequent section he is empowered to summon witnesses from any part of the county to attend his court. If he may hold court anywhere in his county, he may require witnesses to come from the township wherein he was elected to the farthermost limits of the county to attend his court.

So that we think a sound public policy is evidenced by the provision of Section 582; and that the provisions in respect to attachment, contained in Sections 583 and 584, do not enlarge the territory in which he may hold his court; and that the place for holding court in civil actions is controlled by Section 582; and this we think is according to the authorities in this state.

While the statutes in reference to attachments were not the same as now, yet the Supreme Court, in *McCleary* v. *McLain*, 2 O. S., 369, paragraphs 4 and 5 of the syllabus, has held that a justice of the peace court is one of a limited jurisdiction. Speaking of a justice court, it says:

"When a general jurisdiction of the subject-matter exists, but the statute has prescribed the mode and particular limits in which it may be exercised, it must be confined to the limits thus prescribed, and can not be exercised in any other manner or upon any other terms.

"From the provisions of the statutes conferring jurisdiction on justices of the peace in civil cases, it is plain that a justice's jurisdiction is strictly limited as to the amount of its judgments, whether rendered upon trial or confession, and limited also in its territorial extent."

The court expressly says that such jurisdiction must be con-
fined to the limits prescribed, and can not be exercised in any
other manner or upon any other terms. This language is just
as pertinent to the case before us as it was in the case then before
the court: that the limitations prescribed by statute must be ex-
pressly complied with, that they are mandatory, and that other-
wise the justice court has no jurisdiction, in fact is not a court
otherwise than within the limits prescribed in the statute.

That the limits set by the statute are mandatory, is also deter-
mined in *Tussing* v. *Evans,* 7 C.C.(N.S.), 236. In that case the
court held that, even with consent of the parties, the exercise of
the functions of the office of justice of the peace contrary to the
provisions of the statute renders his judgment void. Other simi-
lar cases and holdings are cited in this opinion.

The Supreme Court, in *Steele* v. *Karb,* 78 O. S., 376, while
holding that a justice of the peace may hold court in a criminal
case anywhere in his county, especially distinguishes the provi-
sions of Section 610, conferring criminal jurisdiction, from Sec-
tion 582, conferring civil jurisdiction, and say that by the pro-
visions of Sections 610 a wider jurisdiction as to the place for
holding court has been given in criminal than in civil cases, call-
ing particular attention to the provisions of Section 582 as to the
place for holding court, and holding that that prohibition does
not obtain in criminal cases. On page 783 the court use the fol-
lowing language:

"Counsel urge that Section 582 must be read in connection
with Section 610 as also a prohibition in criminal as well as civil
cases, and in fixing the situs within which the magistrate may
hold court. * * *

"This is the law after the section was amended April 19, 1898.
See 93 O. L., 146. The last clause of the present section, to-wit,
'But no justice of the peace shall hold court outside the limits
of the township for which he was elected,' was added to the for-
mer language of the section, and so it has since remained.

"That such restriction does not pertain to criminal cases is
very apparent. The section itself confines the definition of ju-
risdiction to civil cases, and it may be reasonably surmised that
prior to the foregoing amendment, the right to hold court in
civil cases outside of the township for which the justice was
elected, was claimed and to some extent exercised. To hedge

against and settle all doubt upon the subject was the intent of the Legislature in adding the clause just quoted. No such clause is found in Section 610. The Legislature in said Section 582 provides that 'the jurisdiction of justices of the peace in civil cases, unless otherwise directed by law, *is limited* to the township wherein they have been elected, and wherein they reside.' "

It is contended that our circuit court, in *Stark* v. *Treat et al,* 6 C.C.(N.S.), 286, has held that this provision of Section 582, as to the place of holding court, did not amount to a prohibition, and that these words added by the Legislature did not change the meaning of the statute. The case was one where the original proceedings were instituted before a justice in his own proper township, and were properly begun there. By consent of the parties the justice of the peace heard the evidence and argument in Cleveland township, and our circuit court held that the justice of the peace could do so. Apparently the hearing of the evidence and the argument were the only proceedings had by the justice of the peace outside of his township. The case was decided before the decision in the Karb case, wherein the Supreme Court called the words of the statute now under consideration a prohibition, and large stress was laid in the circuit court case on the fact that the parties consented, and they use the practice of their court as to hearing cases outside of the proper county by consent as an analogy. There is no express prohibition as to the place where the circuit court shall hold court; and under certain circumstances, perhaps, they may hold court in any other county if the parties consent; but where such prohibition is expressly made by the Legislature, as in the case of the justice of the peace, it seems that such provision should be held to have some effect, especially when enacted by the Legislature under the circumstances pointed out by the Supreme Court in the Karb case; and this seems to be what the Supreme Court itself has said was the effect of the amendment to the statute. The circuit court says that, under the circumstances of that case, the case is to be treated as though it was heard in the proper township. How can such assumption be had in this case, when no part of the proceedings were had in the proper township?

Where a place for holding court is fixed by the Legislature, it is just as essential to the exercise of the jurisdiction of the court as is the jurisdiction of such court over the subject-matter or the persons of litigants. Works on Courts and their Jurisdiction, Section 19, p. 86.

"To give existence to the court, then, its officers and the time and place of holding it, must be such as are prescribed by law." *Hobart* v. *Hobart,* 45 Iowa, 503.

In *Block* v. *Henderson,* 82 Ga., 23, where a suit was brought upon a redelivery bond, and the justice held his court outside of the limits of his district, that court said:

"We think that the exception of the plaintiff in error as to the jurisdiction of the magistrate was well founded, and that the judge of the superior court should have sustained the same. Whenever a court has jurisdiction of the subject-matter of a suit, the defendant therein can waive the jurisdiction as to his person, but if the court has neither jurisdiction of the subject-matter nor of the person, no waiver by the defendant can give the court jurisdiction. If in this case the magistrate had held his court within the limits of his jurisdiction and the defendant had resided outside those limits, and had gone before the magistrate and waived the jurisdiction as to his person, and the magistrate had entered up judgment against him, that judgment would have bound him. But when the magistrate went outside the limits of his jurisdiction and undertook to hold his court, he neither had jurisdiction of the subject-matter nor of the person, and no waiver or agreement made before him outside of his jurisdiction could confer jurisdiction upon him. Outside of the limits of his district he was not a judge. He was no more than a private citizen, and any judgment he gave outside of his jurisdiction, whether by agreement, waiver or otherwise, was no more binding upon the parties than if it had been made before a private individual."

To the same effect are the cases in 50 W. Va., 52; 85 Va., 1; 26 Kan., 780; 36 Kan., 593.

These cases all seem to hold that the place, as well as jurisdiction of the person and the subject-matter, is essential and requisite to the jurisdiction of a court to pronounce a valid judgment. And it is the conclusion of this court, upon this part of

the case, that if the justice of the peace attempts to hold court in a civil action outside of the jurisdiction for which he is elected, he thereby loses his official function and becomes merely a private citizen; and that a judgment rendered in a proceeding wherein his court is held at a place other than as prescribed by the statute is null and void. To hold otherwise is to permit by implication (which the Supreme Court in the Karb case seem to say can not be made) the holding of a court of a limited jurisdiction without conforming to the limits prescribed in the statute. Such implication should not be made. This also seems to be held in the McCleary case, to which I have just called attention, in the last paragraph of the syllabus, which reads as follows:

"The jurisdiction of a justice's court will not be extended, by construction, beyond the letter and probable policy of the statute creating it, especially in a class of cases where it is proverbial that its exercise is so frequently invoked for the more successful accomplishment of little schemes of extortion and oppression."

It is claimed by the defendant that the plaintiff consented to all the proceedings had and carried on by the defendant justice in these attachment cases, and thereby the plaintiff is estopped from questioning the legality of the proceedings leading up to the judgments sought to be enjoined.

There is no express allegation in the answer of such import, the only allegation being, that the plaintiffs, "well knowing that he was a justice of the peace of Rockport township, came before him and commenced said actions, and that said causes were heard and tried in the Beckman Building." This paragraph of the answer is not a statement that the plaintiff consented to the holding of court outside the township for which the justice was elected. The only effect is, that, knowing defendant to be a justice of the peace of Rockport township, they came before him. The knowledge of the plaintiff that he was a justice of the peace of Rockport township is not equivalent to consent that the defendant might hold his court and hear these cases in any other township. The plaintiff knew that he had jurisdiction in attach-

ment cases throughout the county, but had no reason to know that he would hold his court outside of the territory provided by the statute.

The further allegation that the cases were heard and tried in the Beckman Building in Cleveland township is not of itself an indication of consent. For all that appears, defendant required such hearing in the Beckman Building. If it be inferred that the plaintiff was present at such trial in the Beckman Building, it does not follow that it consented. For all that appears in this allegation, the plaintiff may have protested. But whether the plaintiff consented or not, in view of the construction which I have placed upon the statute, which seems to me to be its only proper construction, the consent of the party can not change the jurisdiction of a justice of the peace so as to permit him to hold his court in any other place than that prescribed by the statute. As well might it be said that if the defendant held court in attachment cases in Stark county, or in any other county in Ohio, and the plaintiff consented, the judgment would be valid as to the plaintiff. It seems to me the statement of this proposition would be its own refutation. The statute has pointed out the place where he must hold court, and if he attempts to hold it at any other place, whether the plaintiff consent or not, his judgment is *coram non judice*, for in no other place can he hold court, and in no other place has he civil jurisdiction over causes and persons.

Many cases have been cited by the defendant in respect to consent, and there is no question but that if a defendant or plaintiff consent to subject his person to the jurisdiction of a court, he will be bound thereby; and if in the present case the plaintiff had brought his action and the court had heard these cases in the place pointed out by the statute for holding his court, the plaintiff unquestionably would have been bound by his judgment. And this seems to the court to be precisely the holding of the case to which the defendant calls particular attention in the 60 O. S., 340, at page 352.

In the case of *LaGrange* v. *Ward*, 11 O., 257, where the court sat at a place in the county other than the county seat, the Supreme Court say the statute is silent as to the place where the

court shall sit, and as the court did in fact sit within the county of its jurisdiction, though not at the county seat, its judgment was valid and not void.

In the case at bar the justice of the peace did not hold his court in the place of his general jurisdiction, but entirely outside of the territorial limits prescribed by the statute. The court, in the LaGrange case, did not pass on the question whether, if the court had attempted to hold court outside of its county, its proceedings would have been void. It confined its decision entirely to a place within the general jurisdiction of the court.